UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 00-968(DSD/SRN)

Mies Equipment, Inc.,

Plaintiff,

v.

**ORDER**

NCI Building Systems, L.P.
and Metallic Building, Co.,

Defendants.

David T. Shay, Esq. and Shay Law Office, 1513 St. Germain Street West, P.O. Box 9, St. Cloud, MN 56302, counsel for plaintiff.

Thomas B. Caswell III, Esq., Chad A. Snyder, Esq. and Zelle, Hofmann, Voelbel, Mason & Gette, 33 Sixth Street South, Suite 4400, Minneapolis, MN 55402, counsel for defendants.

This matter is before the court on defendants' motion for summary judgment and on plaintiff's motion for partial summary judgment. Plaintiff filed this action asserting claims for: (1) breach of contract; (2) fraudulent misrepresentation; and (3) negligent performance arising out of the purchase and construction of pre-engineered buildings.[1] For the reasons stated,

[1] Plaintiff also asks the court to enter a declaratory (continued...)

MAR 27 2001

FILED ______
FRANCIS E. DOSAL, CLERK
Judgment Ent'd. MAR 27 2001
Deputy Clerk's Initials ______

defendants' motion for summary judgment is granted and plaintiff's motion is denied. Accordingly, plaintiff's claims are dismissed with prejudice.

## BACKGROUND

Plaintiff Mies Equipment ("Mies") is a Watkins, Minnesota company that sells agricultural and consumer products. Defendant Metallic Building Co. and NCI Building Systems, L.P. ("Metallic") manufactures and sells a variety of pre-engineered buildings for commercial use. In December 1997, Mies decided to expand its showroom and retained Cornerstone Construction, Inc. ("Cornerstone") to serve as the general contractor for the project.[2] In its role as general contractor, Cornerstone decided to buy pre-engineered steel buildings from Metallic. Cornerstone selected Metallic because it offered the fastest delivery. Metallic's sales representative, Dan Maher, indicated that the

---

[1](...continued) judgment for plaintiff on the issue of liability. However, since the court concludes that defendant is entitled to summary judgment on all claims, plaintiff's request for declaratory judgment is denied.

[2] The contract between Cornerstone and plaintiff makes no reference to defendants' purported delivery date. (Snyder Aff. ¶ 8, Ex. G.)

buildings could be delivered in 6-7 weeks.[3] A purchase order was issued by Metallic and sent to Cornerstone delineating the terms and specifications for the ordered buildings. (See Shay Aff. ¶ 6 and Ex. E.) The purchase order included "Uniform Terms and Conditions." (Id. at 8-9.) Article 8 of these terms provided Metallic's express warranty and expressly waived any liability for the incurrence of consequential damages including lost profits. (Id.) Article 8 also specified that: "Seller's schedule is approximate and subject to delays due to causes beyond control of Seller including ... inability to obtain material, labor, or manufacturing facilities..." (Id.)

Cornerstone received an order confirmation dated April 22, 1998. (Shay Aff. ¶ 5 and Ex. D.) The order confirmation did not mention any delivery schedule or dates for delivery. (Id.) The order confirmation did indicate that defendants could not "proceed with the design work and anchor bolt layouts" due to questions about plaintiff's design specifications arising from departures from Metallic's standard design structures. (Id.) Because of these delays, the first building was not delivered until mid-July,

[3] According to Cornerstone's manager, Maher stated that while delivery in "six to seven weeks was a little aggressive," it was not "impossible and that he could achieve that." (Walz Dep. at 13).

about six weeks later than Dan Maher had forecasted in April. Moreover, when the building was delivered, certain structural problems arose which defendants resolved by ordering additional parts and hiring subcontractors to correct. It is undisputed that there were no significant problems with the final buildings, and the project was completed by early October 1998.

In July 1999, plaintiff sent a letter to defendants demanding $180,000 for alleged lost profits stemming from the delay. When defendants did not respond, plaintiff initiated this lawsuit. Defendants now move for summary judgment on all claims, and plaintiff moves for partial summary judgment on the issue of liability. For the reasons stated, defendants' motion is granted and all claims are dismissed with prejudice.

## DISCUSSION

### A. Summary Judgment Standard

The court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material only when its resolution affects the outcome of the case.

See Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. Id. at 252. There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. Id. at 249.

On a motion for summary judgment, the court views the evidence in favor of the nonmoving party and gives that party the benefit of all justifiable inferences that can be drawn in its favor. Id. at 250. The nonmoving party, however, cannot rest upon mere denials or allegations in the pleadings. Id. Nor may the nonmoving party simply argue that facts supporting its claim will be developed later or at trial. Rather the nonmoving party must set forth specific facts, by affidavit or otherwise, sufficient to raise a genuine issue of fact for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If a plaintiff fails to support an essential element of a claim, summary judgment must issue because a complete failure of proof regarding an essential element renders all other facts immaterial. Celotex, 477 U.S. at 322-23. No genuine issue of material fact exists "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." DLH, Inc. v. Russ, 566 N.W.2d 60, 69 (Minn. 1997) (citation

omitted). A genuine issue for trial must be established by substantial evidence. Id. at 69-70.[4] With this standard at hand, the court addresses the parties' motion. Furthermore, since both parties have moved for summary judgment, defendants on all claims and plaintiff on the issue of liability, the parties implicitly acknowledge that there are no material facts in dispute.

**B. Breach of Contract Claim**

Plaintiff appears to assert two bases for its breach of contract claim, first, that plaintiff and defendant purportedly entered into a contract based upon the oral representations of Dan Maher, and second, that plaintiff is a third-party beneficiary of the Metallic-Cornerstone contract, and is thereby entitled to damages for a purported breach of that contract. As a preliminary matter, the court concludes that plaintiff fails to demonstrate, and the record does not reflect, that any separate contract was ever directly formed between plaintiff and defendants.[5] Thus, the

---

[4] Summary judgment is also especially appropriate in resolving disputes involving the interpretation of unambiguous contracts. Howard v. Russell Stover Candies, Inc., 649 F.2d 620, 623 (8th Cir. 1981).

[5] Plaintiff's owner acknowledges that his company did not directly have a contract with Metallic. (Mies Dep. at 23.) He also acknowledges that any representations made by Dan Maher regarding delivery dates were specifically in reference to the (continued...)

only potential basis for plaintiff's claim of breach is as a third-party beneficiary to the Metallic-Cornerstone contract.

Although defendants dispute whether plaintiff was actually a third-party beneficiary to the agreement between Metallic and Cornerstone, the court determines that it does not need to specifically resolve this issue since it concludes that, even as a third-party beneficiary, plaintiff's claim for breach fails as a matter of law. As a third-party beneficiary, plaintiff cannot show that: (1) any terms of the underlying contract were breached, or (2) that plaintiff is entitled to recover damages even if breach could be established.

**1. No Breach of Terms of Underlying Contract**

Plaintiff's assert that the contract here consists of the purchase order and the "bargain of the parties made by their oral agreement." (Pl. Mem. Supp. Summ. J. at 7.) After careful review of the record, the court is unable to identify any term of the

---

[5](...continued) Metallic-Cornerstone contract. (Id. at 20-24.) Furthermore, any alleged oral representations made by defendants' agent to plaintiff, even if plaintiff could meet its initial burden of showing that they rise to the level of manifesting a separate contract, would be barred by the statute of frauds. It is uncontested that the goods at issue here exceed a value of $500, and plaintiff has failed to produce or identify any confirmatory writing containing the alleged delivery terms sufficient to satisfy the statue. See Minn. Stat. § 336.2-201 (2001).

unambiguous contract between Metallic and Cornerstone that definitively required defendant to deliver its building within six or seven weeks as alleged by plaintiff. There is no evidence, either oral or written, that defendants ever agreed to or directly set a firm delivery date.

The purchase order only provides for a "Requested Ship Date" and contains no direct terms specifying a delivery date or delineating a "time is of the essence" provision.[6] See Day v. Amax, Inc., 701 F.2d 1258, 1263 (8th Cir. 1983) (providing that terms must be sufficiently definite to create an enforceable contract); Baker Domes v. Wolfe, 403 N.W.2d 876, 878 (Minn. Ct. App. 1987) (where contract does not specify "time is of the essence," there was no breach for failure to complete performance on time).[7]

Moreover, the purchase order clearly indicates that delivery dates are not firm deadlines and expressly states in Article 8 that: "Seller's schedule is approximate and subject to delays due

---

[6] In the space following the "Requested Ship Date" there is no computer printed text, as with the rest of the purchase order, but rather a handwritten note providing: "5-6 weeks". (Shay Aff. Ex. E.)

[7] The order confirmation form sent by defendants on April 22, 1998, is similarly devoid of any delivery terms or date of delivery. (See Shay Aff. Ex. D.)

to causes beyond the control of Seller including, but not limited to, inability to obtain material, labor or manufacturing facilities..." (Shay Aff. Ex. E at 9.) This unambiguous language supports the court's conclusion that the requested ship date did not create a binding contractual term, but only reflected a forecast of a delivery date. See Williston on Contracts § 4:18 (3d ed. 1968)("a reservation in either party of a future unbridled right to determine the nature of the performance ... has often caused a promise to be too indefinite for enforcement.") Any requested shipment date is only an approximation, not a firm commitment, specific contractual term or express guarantee.

Regarding the purported second component to this contract, the "bargain of the parties made by their oral agreement," (Pl. Mem. Supp. Summ. J. at 7), the court is not persuaded by plaintiff's argument that the alleged oral representations of Dan Maher serve to either define or modify the terms of the underlying contract. Put differently, the court concludes that plaintiff cannot rely on any alleged oral representations to sustain its claim of breach or to survive summary judgment.

First, for any oral statement to be considered in a contract dispute with the purpose of modifying express and unambiguous written terms it must fall into one of the exceptions to the parol

evidence rule.[8] Under that rule, the terms of a final and integrated written expression may not be contradicted by parol evidence of previous understandings and negotiations for the purpose of varying or contradicting the writing. Apple Valley Red-E-Mix Inc. v. Mills-Winfield Eng'g Sales, Inc., 436 N.W.2d 121, 123 (Minn. Ct. App. 1989). See Action Time Carpets, Inc. v. Midwest Carpet Brokers, Inc., 271 N.W.2d 36, 39 (Minn. 1978) (holding that representations regarding delivery dates made by salesman prior to the purchase order were properly disregarded by the trial court since they violated the parol evidence rule). The court concludes that the purchase order reflects a final and integrated expression of the parties' agreement.

Plaintiff asserts that the parol evidence rule is inapplicable because the purported oral representations may be introduced to explain the purchase order if the court concludes that the purchase

---

[8] The parol evidence rule as codified in Minnesota specifies that: "Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such term as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented[:] (a) by course of dealing or usage of trade or by course of performance; and (b) by evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement." Minn. Stat. § 336.2-202 (2001).

order is ambiguous, or may be allowed "to explain and supplement the Purchase Order as a course of dealing and as evidence of consistent additional terms" under the Uniform Commercial Code ("U.C.C.") § 2-202.[9] (Pl. Mem. Supp. Summ. J. at 9).

The court is not persuaded by either argument. A careful review of the entire record, including the purchase order in question, shows no ambiguity.[10] Thus, the alleged oral representations cannot be considered to explain the contract established by the purchase order. See Action Time, 271 N.W.2d at 39. And the court does not agree with plaintiff's contention that the parol evidence rule may be circumvented to supplement a course of dealing or as evidence of consistent additional terms under the

[9] Minn. Stat. § 336.2-202 (2001).

[10] Whether or not a contract term is ambiguous is a question of law. Lehman Bros. v. Clark Oil & Refining Corp., 739 F.2d 1313, 1317 (8th Cir. 1984). Extrinsic evidence is not relevant for determining the existence of ambiguity. St. Louis Union Trust Co. v. U.S., 617 F.2d 1293, 1300 (8th Cir. 1980). A contract term is ambiguous if it is reasonably susceptible to more than one construction. Erhahardt v. Penn. Mut. Life Ins. Co., 902 F.2d 664, 667 (8th Cir. 1990). If a contract term is determined to be unambiguous, its interpretation is a question of law. Cooper v. Lakewood Eng'g & Mfg. Co., 874 F. Supp. 947, 953 (D. Minn. 1994). The purchase order's reference to requested ship date is not an ambiguous term that requires parol evidence for clarification. The word "requested" is not ambiguous. Its meaning is clear on its face. See Jenoff, Inc. v. New Hampshire Ins. Co., 558 N.W.2d 260, 262 (Minn. 1997)(terms of agreement must be given their plain, ordinary or popular meaning). The language of Article 8 is similarly unambiguous and clear on its face.

U.C.C.[11] Parol evidence that supplements or modifies terms of a written agreement must be clear and convincing. Thoe v. Rasmussen, 322 N.W.2d 775, 777 (Minn. 1982) (citation omitted). As reflected in the record, the alleged oral representations here are neither.[12]

Moreover, the court concludes that since any purported oral statements that plaintiff seeks to introduce in this case would directly contradict or vary the express terms of the purchase order, it is precisely the type of evidence that is barred by the parol evidence rule. See United Artists Comm. Inc. v. Corporate Property Investors, 410 N.W.2d 39, 41 (Minn. Ct. App. 1987) (citing

---

[11] A course of dealing is defined as a "sequence of previous conduct between the parties to a particular transaction ... establishing a common basis of understanding..." Minn. Stat. § 336.1-205(1). This clause is inapplicable given the facts.

[12] Maher does not specifically recall what he told Cornerstone but does generally remember forecasting delivery in about six or seven weeks. (Maher Dep. at 30.) Maher worked in this industry for over 20 years and knew that buildings ordered in early spring were often delivered within six or seven weeks. (Id. at 30-31, 92-93.) He also based his prediction on production schedules that he received from defendants and that were intended to assist sales representatives in forecasting delivery dates. (Id. at 13, 31.) Maher also indicated that he understood that any delivery schedule could not be specifically guaranteed given the many unforeseeable factors that could delay production. (Id. at 21-23, 93-96, 98.) Plaintiff's owner also acknowledges that he could not specifically recall what Maher had said regarding the delivery forecast, but generally remembered hearing a reference to six weeks. (Mies Dep. at 20-23.) Mies also could not identify or name any document or other source that specifically reflected an alleged promise of delivery within six weeks. (Id. at 24-25.)

Material Movers, Inc. v. Hill, 316 N.W.2d 13, 17 (Minn. 1982)); Action Time, 271 N.W.2d at 39.

The record adequately reflects that, even if the purported oral representations of Dan Maher were considered, they would not change the resolution of this matter. Plaintiff does not provide evidence of any specific oral promise that Metallic would deliver the buildings within six or seven weeks. To survive summary judgment, plaintiff may not rest upon mere denials or allegations, but must instead set forth specific material facts sufficient to raise genuine issues for trial. See Young v. Warner-Jenkinson Co., Inc., 152 F.3d 1018, 1021 (8th Cir. 1998).

Since the contract here did not include a mandatory delivery date or a "time is of the essence" clause, and since plaintiff has not shown that defendants orally promised that delivery would occur within six or seven weeks, any delay in delivery cannot constitute breach. Simply stated, the requested shipping date is not contractually binding. Thus, the court concludes that as a matter of law plaintiff has not met its burden of supporting its claim for breach of contract. Accordingly, defendants' are entitled to summary judgment on this claim.[13]

---

[13] Plaintiff also contends, arguendo, that in the absence of a specific delivery date, the U.C.C. would provide a default rule.
(continued...)

**2. No Damages Under Terms of Contract**

The contract here also contains a clear and unambiguous damages limitation clause. Such clauses are well recognized under Minnesota law. See Transport Corp. of America, Inc. v. IBM Corp., Inc., 30 F.3d 953, 960 (8th Cir. 1994); Minn. Stat. § 336.2-719(3)(consequential damages may be limited or excluded). In a breach of contract action, the plaintiff has the burden of proving not only breach, but that damages arose from the breach. See Buchman Plumbing, Inc. v. Regents of Univ. of Minnesota, 298 Minn. 328, 215 N.W.2d 479, 486 (1974) ("mere delay is not compensable, in a claim for breach of contract, without specific warranty") (citations omitted). As a third-party beneficiary, plaintiff's rights are directly dependent upon and measured by the terms of the underlying contract. In Re Hennepin County 1986 Recycling Bond Litigation, 540 N.W.2d 494, 499 (Minn. 1995) (citations omitted). The court thus concludes that, even if plaintiff were able to

---

[13](...continued)
See Minn. Stat. § 336.2-309(1) ("time for shipment or delivery...[not] agreed upon shall be a reasonable time"). The U.C.C. default terms are only applicable in the absence of express language providing otherwise, as here. Id. Thus, the express and clear waiver of delivery nullifies any assertion that the U.C.C. default terms should govern this dispute. Moreover, in light of the factual record and the specific circumstances surrounding the delays in shipment, the court cannot conclude that the delivery was inherently unreasonable.

present a prima facie claim for breach of contract, the terms of the contract would bar plaintiff's claims for the consequential damages alleged here since the record reflects that all direct costs associated with the delay were absorbed by either Cornerstone or Metallic. (Walz Dep. at 37-40.) The court concludes that plaintiff's action also fails on this basis.

**C. Dismissal of Tort Claims**

Plaintiffs allege several tort causes of action in this dispute, including fraudulent misrepresentation and negligent performance of contract. These tort claims are dismissed with prejudice and defendants are granted summary judgment.[14]

---

[14] The court also notes that plaintiff alludes to a claim of promissory estoppel. (Pl.'s Mem. Supp. Summ. J. at 14.) However, plaintiff does not expressly brief this claim or raise it in oral arguments. Moreover, the court concludes that promissory estoppel is not applicable here for the same reasons that the contract and tort claims fail: plaintiff has failed to meet its burden of establishing that defendant expressly *promised* delivery within 6-7 weeks. See Gorham v. Benson Optical, 539 N.W.2d 798, 801 (Minn. Ct. App. 1995) (promissory estoppel requires a promise which the promisor should reasonably expect to induce action or forbearance); Faimon v. Winona State Univ., 540 N.W.2d 879, 882 (Minn. Ct. App. 1995) (explaining that promissory estoppel has three parts: promise, reliance and injustice). Promissory estoppel is only applicable to imply a contract in law where none exists in fact. See Sacred Heart Farmers Cooperative Elevator v. Johnson, 232 N.W.2d 921, 923 (Minn. 1975). Here, plaintiff does not allege that *no* contract existed, but rather seeks damages for a breach of the purported delivery terms of the Metallic-Cornerstone contract.

**1. Failure to Identify Misrepresentation**

Under Minnesota law, actions based on fraudulent or negligent misrepresentation require proof that a misrepresentation of fact was made. See Florenzano v. Olson, 387 N.W.2d 168, 173 (Minn. 1986); Lenscrafters, Inc. v. VisionWorld, 943 F. Supp. 1481, 1488 (D. Minn. 1996). In order to prevail on its fraud claim, plaintiff has to prove in part that: (1) Metallic misrepresented a past or present fact, and (2) Mies relied on that misrepresentation. See Florenzano, 387 N.W.2d at 173-174. The court concludes that plaintiff has failed to satisfy either element.[15]

The record reflects no evidence that defendant misrepresented a past or present fact. Plaintiff's sole claim centers upon Dan Maher's predictions in March or April of 1998 that the buildings would be delivered within six or seven weeks. A prediction of something that may happen in the future cannot form the basis of a claim for fraud. See Florenzano, 387 N.W.2d at 173 ("[a] good faith, non-negligent mistake is not the basis of liability for misrepresentation in this state."); Vandeputte, 216 N.W.2d at 147

[15] Since plaintiff fails to satisfy the first two elements, the court need not address the third element -- proof that the plaintiff suffered damages as a result of its reasonable reliance on the misrepresentation. See Vandeputte v. Soderholm, 216 N.W.2d 144, 147 (Minn. 1974).

("[i]t is a well settled rule that a representation or expectation as to future acts is not a sufficient basis to support an action for fraud merely because the represented act or event did not take place."); Belisle v. Southdale Realty Co., 168 N.W.2d 361, 363 (Minn. 1969)(same); and Rognlien v. Carter, 443 N.W.2d 217, 220-221 (Minn. Ct. App. 1989) (same).

Thus, to prevail on its fraud claim, plaintiff has the burden of showing that Maher knew at the time of making the alleged promise that the buildings would not be delivered when he said they would. See Martens v. Minnesota Mining and Mfg. Co., 616 N.W.2d 732, 747 (Minn. 2000)(dismissing fraud claim where plaintiff failed to show that defendant knew the alleged representations "were false and had no intention of fulfilling [them] at the time they were made"). The court concludes that plaintiff has failed to meet its burden. Nothing in the record indicates fraud. Since plaintiff cannot prove, or raise a material fact question about fraud, defendants are entitled to summary judgment on the misrepresentation claim.

**2. Negligent Performance**

As a preliminary matter, the court is unconvinced that negligent performance of contract even exists as a viable cause of action in Minnesota. See Lesmeister v. Dilly, 330 N.W.2d 95, 102

(Minn. 1983); Lampert Lumber Co. v. Joyce, 405 N.W.2d 423, 424 (Minn. 1987); United States v. Johnson, 853 F.2d 619, 622 (8th Cir. 1988) (negligence action not permitted when duties arise under contract). Clearly, a plaintiff can only recover in tort if it is shown that the defendant had "some duty imposed by law, not one imposed by contract." D&A Dev. Co. v. Butler, 357 N.W.2d 156, 158 (Minn. Ct. App. 1984) (quoting Keiper v. Anderson, 165 N.W. 237, 238 (Minn. 1917)). Even if such a cause of action is recognized under Minnesota law, the court concludes that given the complete absence of a duty, plaintiff's claim fails as a matter of law.

**CONCLUSION**

Plaintiff has failed to meet its burdens to sustain both the breach of contract and tort claims, therefore defendants are entitled to summary judgment, plaintiff's motion for partial summary judgment is denied, and plaintiff's claims are dismissed with prejudice.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: March 27, 2001

David S. Doty, Judge
United States District Court

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information must be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*

Forms/8thcircuitprehearingconf.wpd

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.